## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ———————————————— : | | |
| MARYANN COTTRELL and RICHARD G. : | | |
| HOLLAND, : | | |
| : | | |
| Plaintiffs, : | | Civil Action No. |
| : | | 12-1986 |
| v. : | | |
| : | | |
| KEYSHONNA NORMAN, *et al.,* : | | **OPINION** |
| : | | |
| Defendants. : | | |
| : | | |
| ———————————————— : | | |

<u>Appearances</u>:

MARYANN COTTRELL
RICHARD G. HOLLAND
31 S. ACADEMY ST.
GLASSBORO, NJ 08028
     *Pro Se Plaintiffs*

STEPHEN GUICE
LAW OFFICES OF STEPHEN GUICE, P.C.
413 CLEMENTS BRIDGE ROAD
BARRINGTON, NJ 08007
     *Attorney for defendant Keyshonna Norman*

CHRISTOPHER THOMAS HUBER
OFFICE OF THE ATTORNEY GENERAL
HUGHES JUSTICE COMPLEX
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625
     *Attorney for defendants Rowan University, Rowan University Police Dept., Rowan University Public Safety Dept., Michael Kantner, Rowan Security Dept., Lt. John Malinski, Siobhan McClintok, Officer Ryan Brennan, Officer Carrie Rathof, Sgt. Frank Davey, and Richard Hale*

HILLMAN, District Judge:

    Before the Court is a motion to dismiss filed by defendants Rowan University, Rowan University Police Dept., Rowan University Public Safety Dept., Michael Kantner, Rowan Security Dept., Rowan Police Lieutenant John Malinski, Rowan Police Officer Siobhan McClintok, Rowan Police Officer Ryan Brennan, Rowan Police Officer Carrie Rathof, and Rowan Police Sergeant Frank Davey (collectively "Rowan defendants").[1]  For the reasons explained below, the Rowan defendants' motion to dismiss will be granted.


I.    **FACTUAL BACKGROUND**

    According to plaintiffs' second amended complaint, plaintiff Cottrell is a mother of a severely disabled daughter, and plaintiffs are legally permitted to park their car in a handicap accessible parking space reserved for disabled individuals while transporting Cottrell's daughter.  Plaintiffs are self-described longtime "advocates for the disabled" and often challenge perceived parking violations of individuals who

---

1 Defendant Richard Hale is a former employee of Rowan University.  Counsel for Rowan states that they anticipate that they will represent Hale, but that plaintiffs have yet to serve him.  The Order accompanying this Opinion will order plaintiffs to show cause why Hale should not be dismissed for failure to prosecute.

illegally park in handicap parking spaces.  They regularly file complaints with the U.S. Department of Justice, and in this Court.

On April 1, 2010, plaintiffs drove Cottrell's daughter, Brittany Sloope, to Rowan University to attend a "Get Fit" class.  After class ended, plaintiffs were returning to their car when they noticed a car parked in a handicap parking space. Plaintiffs state that the temporary handicap placard had expired.  Plaintiffs and the driver of the vehicle, defendant Keyshonna Norman, got into a verbal altercation.

About an hour after the incident, Norman filed an incident report with Rowan University against Cottrell for harassment and for theft of her temporary handicap placard.  Based on the statements given by Norman, Rowan University police officers filed burglary charges against Cottrell for entering Norman's vehicle and removing the handicap placard.

On April 2, 2010, a Glassboro police officer, and four Rowan University police officers came to plaintiffs' residence and arrested Cottrell and charged her with theft, disorderly conduct and harassment.  Plaintiffs were also given a trespass notice banning them from Rowan's campus.  Cottrell filed a citizens' handicap parking complaint and harassment charge against Norman. On February 28, 2011, the charges against

3

Cottrell were dismissed.

## II.    <u>PROCEDURAL BACKGROUND</u>

On April 2, 2012, plaintiffs filed a complaint against the
Rowan defendants and defendant Keyshonna Norman.  On October 15,
2012, the Rowan defendants filed a motion to dismiss plaintiffs'
complaint.  Plaintiffs filed an opposition brief to the motion
and then subsequently filed a motion for leave to amend their
complaint on January 29, 2013.  On May 3, 2013, plaintiffs'
motion for leave to amend was granted.

The Rowan defendants then filed a motion to dismiss
plaintiffs' first amended complaint on May 17, 2013.  Plaintiffs
again filed a motion on September 6, 2013 for leave to amend
their complaint a second time.  On December 4, 2013, the Court
granted in part and denied in part plaintiffs' motion.  The
Court granted plaintiffs leave to add additional claims for
violations of the Fourth and Fourteenth Amendment, but denied
plaintiffs' leave to add claims under the Fifth Amendment and
claims for malicious use of process against the Rowan
defendants.  The Court also granted plaintiffs leave to assert a
malicious use of process claim against Norman.

Plaintiffs' second amended complaint alleges their ban from
Rowan's campus violated their First and Fourteenth Amendment

4

rights and the New Jersey Civil Rights Act.  They also bring
discrimination and retaliation claims pursuant to the ADA and
NJDLAD.  Plaintiffs further allege false arrest in violation of
the Fourth Amendment.  Plaintiffs seek to enforce the ADA
requirements, to enjoin Rowan from banning them from campus, and
to recover monetary damages and attorney's fees.

The Rowan defendants filed a motion to dismiss plaintiffs'
second amended complaint which is now before the Court.  For the
reasons explained below, the Rowan defendants' motion to dismiss
will be granted.


**III. <u>JURISDICTION</u>**

Plaintiffs have alleged federal rights violations and
therefore this Court exercises subject matter jurisdiction
pursuant to 28 U.S.C. § 1331.  The Court exercises supplemental
jurisdiction over plaintiffs' related state law claims pursuant
to 28 U.S.C. § 1367.


**IV.  <u>STANDARDS FOR MOTION TO DISMISS</u>**

**A. FED. R. CIV. P. 12(b)(1)**

The Rowan defendants argue that plaintiffs lack standing to
bring discrimination claims under the ADA and the NJLAD.  Lack
of standing is a challenge to this Court's subject matter

jurisdiction and, therefore, is determined pursuant to Fed. R. Civ. P. 12(b)(1).  In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (citing Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)).

Rule 12(b)(1) motions are either facial or factual challenges.  CNA v. United States, 535 F.3d 132, 140 (3d Cir. 2008).  A facial attack concerns the sufficiency of the pleadings, whereas a factual attack is a dispute over the existence of certain jurisdictional facts alleged by the plaintiff.  Id. (citing United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)).

In deciding a motion that attacks the complaint on its face, the court must accept the allegations in the complaint as true.  Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977); Gould Elecs., 220 F.3d at 176 ("In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.").

If the motion attacks the facts supporting jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the

merits of jurisdictional claims." <u>Mortensen</u>, 549 F.2d at 891.
The plaintiff has the burden to prove that jurisdiction does in
fact exist.  <u>Id.</u>

Here, the Rowan defendants are making a facial attack that
plaintiffs lack standing to bring discrimination claims pursuant
to the ADA and NJLAD.  <u>See</u> <u>In Re Schering Plough</u>, 678 F.3d at
243.  As such, the Court "must accept as true all material
allegations set forth in the complaint, and must construe those
facts in favor of the nonmoving party" as it would in reviewing
a complaint pursuant to a Rule 12(b)(6) motion.  <u>Id.</u> ("In
evaluating whether a complaint adequately pleads the elements of
standing, courts apply the standard of reviewing a complaint
pursuant to a Rule 12(b)(6) motion to dismiss for failure to
state a claim.").  The three-step approach is used to evaluate
whether a complaint satisfies this standard:

> First, the court must take note of the
> elements a plaintiff must plead to state a
> claim.  Second, the court should identify
> allegations that, because they are no more
> than conclusions, are not entitled to the
> assumption of truth.  Finally, where there
> are well-pleaded factual allegations, a
> court should assume their veracity and then
> determine whether they plausibly give rise
> to an entitlement for relief.

<u>Id.</u> (internal quotations omitted).

Thus, although lack of standing is a subject matter

7

jurisdiction challenge under Rule 12(b)(1), the standard applied is the same applied under Rule 12(b)(6).

**B. FED. R. CIV. P. 12(b)(6)**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks

8

"'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

As noted above in the discussion of the standard for a Rule 12(b)(1) motion mounting a facial attack based on standing, the Third Circuit has outlined a three step approach in reviewing a complaint under Rule 12(b)(6). Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (citing Iqbal, 129 S.Ct. at 1947). Second, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Id.; Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Finally, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

9

"'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,

however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

The Rowan defendants' argument that some of plaintiffs' claims are barred by the doctrine of qualified immunity shall be reviewed under Rule 12(b)(6). See Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (finding that "qualified immunity 'will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'") (citations omitted); Peteete v. Asbury Park Police Dept., 09-1220, 2010 WL 5151238, at *3 (D.N.J. Dec. 13, 2010) ("a defendant's claim that he is entitled to qualified immunity is properly evaluated under Rule 12(b)(6) rather than  Rule 12(b)(1)."). Additionally, their argument that plaintiffs fail to state a claim upon which relief can be granted will be analyzed under Rule 12(b)(6).


**V.   DISCUSSION**

The Rowan defendants argue that plaintiffs are not disabled and therefore lack standing to bring discrimination claims under the ADA and NJLAD.  They also argue that plaintiffs' retaliation claims under the ADA and NJLAD should be dismissed because there

11

is no causal connection between their 2010 ban from campus and their alleged protected activity.  They further argue that plaintiffs' claims under § 1983 and the New Jersey Civil Rights Act alleging that defendants violated their First, Fourth and Fourteenth Amendment Rights are barred by qualified immunity.

Plaintiffs do not respond directly to the Rowan defendants' motion to dismiss.  Rather, they filed a one paragraph statement that they oppose the motion and rely upon their previous responses, particularly documents 19 and attachment 1, document 30 and attachments 1 and 2,[2] document 40 and attachments, and document 50 and attachments.  This "response" is woefully inadequate.  See Albrechtsen v. Board of Regents of University of Wisconsin System, 309 F.3d 433, 436 (7th Cir. 2002) (stating "'Judges are not like pigs, hunting for truffles buried in' the record.") (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)); see also, Doeblers' Pennsylvania Hybrids, Inc. v. Doebler, 442 F.3d 812  (3d Cir. 2006) (finding appellant failed to properly cite to the appendix); Doe v. Sizewise Rentals, LLC, No. 09-3409, 2010 WL 3614200, at *3 (D.N.J. Sept. 8, 2010) (stating that "[n]either the Court nor Defendants

_____

2 Document 30 is plaintiffs' brief in opposition to defendant Norman's, now mooted, motion to dismiss.  Since Norman is not moving for dismissal at this time, this opposition brief will not be considered by the Court.

should be required to sift through a tome of allegations to piece together [] claims" and dismissing claim without prejudice on motion to dismiss).

Plaintiffs have filed a complaint in this Court and are responsible for the prosecution of their case.  It is incumbent upon plaintiffs to properly respond to motions filed, particularly here where the motions to amend the complaint were granted and the motions to dismiss along with the attendant briefing were rendered moot.  The defendants would not be permitted to rely on a previously filed, and mooted, motion to dismiss and, therefore, plaintiffs should not be permitted to rely on previously filed responses.  Although pro se, plaintiffs are seasoned litigants.  If they choose to file a complaint in this Court, they are required to properly follow its rules and properly respond to all motions filed.

Thus, the Court must decide whether to treat the Rowan defendants' motion to dismiss as unopposed, or permit them to rely on their previous briefs.  See Estate of Casella v. Hartford Life Ins. Co., No. 09-2306, 2009 WL 2488054, at *2 (D.N.J. Aug. 11, 2009) (even if unopposed, a motion to dismiss must be addressed on the merits) (citing Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991)).  Here as a matter of prudence, the Court will review the previous submissions and

collectively treat them as one response to the motion presently before the Court.

A. **Standing to Bring ADA and NJLAD Claims**

Plaintiffs' claims for discrimination in violation of the ADA and NJLAD will be dismissed on grounds that they lack standing to bring such claims.  To present a prima facie case for discrimination claims arising under the ADA and NJLAD, the plaintiff must be disabled.  See 42 U.S.C. § 12182; N.J.S.A. 10:5-12(f).

As the Court stated previously in Cottrell v. Rowan University, 786 F.Supp.2d 851, 858 (D.N.J. 2011):

> Plaintiffs are not disabled.  Cottrell is the mother of a disabled child, and Holland is Cottrell's companion and fellow caregiver. The disabled child is not a plaintiff in this case. It is only because of plaintiffs' relationship with the disabled child, who plaintiffs state requires constant care and attention, that they are lawfully entitled to park in handicapped parking spaces. As this Court noted in a different case involving these plaintiffs, "plaintiffs have not provided any basis that the ADA and NJLAD requirement that a plaintiff be disabled should be extended to include caregivers of a disabled person.  Simply because a person is authorized by law to park in a handicapped space does not mean he is 'disabled' in the context of an ADA or NJLAD discrimination claim." Cottrell v. J & R Discount Liquor Gallery, Inc., 2009 WL 1085729, *4 (D.N.J. April 21, 2009) (NLH).  Consequently, because plaintiffs are not disabled, they do

14

not have standing to bring a discrimination
claim under the ADA or NJLAD.  See Lujan v.
Defenders of Wildlife, 504 U.S. 555, 560,
112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)
(providing that in order to establish an
injury in fact, a plaintiff must have
suffered an invasion of a legally protected
interest).

Plaintiffs have not alleged in their second amended
complaint that they are disabled.  Thus, they have not alleged
the requisite elements for a discrimination claim.  Accordingly,
plaintiffs lack standing and their claims for discrimination in
violation of the ADA and NJLAD will be dismissed.

**B.    Retaliation under the ADA and NJLAD**

Plaintiffs' claims for retaliation will be dismissed.  In
contrast to a discrimination claim, a claim for retaliation
under the ADA and NJLAD does not require a plaintiff to
demonstrate that he is disabled.[3]  Krouse v. American Sterilizer

---

3  However, the only relief available to plaintiffs for
retaliation under the ADA is prospective injunctive relief.  See
42 U.S.C. § 12188(a); Goodwin v. C.N.J., Inc., 436 F.3d 44, 50
(1st Cir. 2006) (recognizing that section 12188(a)(1) does not
contemplate an award of money damages in suits brought by
private parties).  By contrast, NJLAD has no such limitations on
relief.  See N.J. Stat. Ann. § 10:5-13; Pinto v. Spectrum
Chemicals and Laboratory Products, 985 A.2d 1239, 1249 (N.J.
2010) (stating that cases under the NJLAD "provide various
remedies for the violation of statutory rights, including
compensatory damages, equitable relief, and attorneys' fees.").
Although plaintiffs do not need to show they are disabled to
bring a retaliation claim, for an ADA claim, they need to show
they have standing by demonstrating a real and immediate threat

Co., 126 F.3d 494, 502 (3d Cir. 1997) ("Unlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA retaliation case need not establish that he is a 'qualified individual with a disability.'").  The ADA and NJLAD make it unlawful to retaliate against or intimidate any individual because he or she has opposed any act or practice made unlawful by the ADA or NLJAD. See 42 U.S.C. § 12203; N.J.S.A. 10:5-12(d), (e).

"To establish a prima facie case of retaliation under the ADA [and NJLAD], Cottrell and Holland [a]re required to show: (1) they engaged in a statutorily protected expression; (2) they suffered an adverse action; and (3) the adverse reaction was

---

of future harm.  See City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).  Although plaintiffs have stated that they have taken their daughter to classes at Rowan, establishing past patronage of Rowan, they have not alleged they intend to do so in the future.  See Cottrell v. Good Wheels, No. 08-1738, 2009 WL 3208299, at *6 (D.N.J. Sept. 28, 2009).  Even if the Court were to assume plaintiffs have standing to bring an ADA retaliation claim, as discussed above, the claim fails. Plaintiffs ask the Court to enjoin the defendants from prohibiting them from entering Rowan's campus and to enjoin defendants from initiating legal action or criminal complaints against plaintiffs for entering the campus or for taking reasonable and good faith actions to enforce the ADA and NJLAD. In other words, they are asking the Court to lift the ban. Because plaintiffs have not alleged facts that could show that defendants instituted the ban in violation of the ADA, or any other statute, the ban is valid.  The ban was instituted against plaintiffs in response to complaints of harassment and Rowan University is permitted to enforce the ban.  Plaintiffs have not presented any facts that could show the terms of the ban are unreasonable or in violation of any law.

causally related to the protected expression."[4]  Cottrell v.
Zagami, LLC, 537 Fed.Appx. 46, 47 (3d Cir. 2013) (citing Higdon
v. Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004); Fogleman v.
Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002)).

     The Court finds that at the prima facie stage, the
plaintiffs have met the first two elements of their retaliation
claim, but not the third.  The Court will assume at this stage
that the plaintiffs' handicap parking space activism on Rowan's
campus was a protected activity.  The plaintiffs have also
stated that they were adversely affected by the ban from Rowan's
campus.  Plaintiffs have not, however, alleged facts that could
show a causal relation.

     The history between the plaintiffs and Rowan University is
well known to the parties and to this Court.  See, e.g.,
Cottrell v. Rowan University, 786 F.Supp.2d 851, 859 (D.N.J.
2011).  Rowan University has banned plaintiffs previously for
harassing and disruptive behavior on its campus.[5]  Id.  Although

---

4  The same showing of proof required for an ADA claim is
required for the NJLAD claim and, therefore, the same standard
is used.  See Zagami, 537 Fed.Appx. at 48 n. 1 ("[T]he same
showings are required to establish a retaliation claim under
both the NJLAD and the ADA") (citing Tartaglia v. UBS
PaineWebber, Inc., 197 N.J. 81, 961 A.2d 1167, 1192 (2008)).

5 The plaintiffs had been previously banned in 2006 from Rowan's
campus "...based on ten documented incidents over the course of
three months where plaintiffs acted hostile, harassing,

plaintiffs had brought a retaliation claim pursuant to the ADA
and NJLAD against Rowan University, the Court found that "it was
their harassing and volatile behavior — and not their
documentation of parking violations — that was the basis for
their ban" and denied the claim.

Plaintiffs bring a similar claim in this case.  They argue
that they were banned from Rowan's campus for policing the
handicapped parking spots.  The facts show, however, that
plaintiffs were banned based on their disruptive behavior toward
Norman, a student at Rowan.  As stated by plaintiffs in their
second amended complaint, "twenty days prior to the incident
[with Norman] Plaintiff Holland video documented a vehicle
parked in a designated handicap space displaying a (sic) expired
temporary handicap placard T307396 issued to Keyshonna Norman
issued date May 21, 2009 on the dashboard.  Ms. Norman was not
present."

There is no allegation that the Rowan defendants banned
plaintiffs based on the activity that occurred twenty days

---

disruptive, and aggressive to Rowan University staff, students,
and visitors, including a nine year old child, a diabetic
pregnant woman, and a student with spinal meningitis.  <u>Cottrell</u>,
786 F.Supp.2d at 859.  In addition, in September 2008, Rowan
sent plaintiffs a warning letter based on two documented
incidents regarding plaintiffs' harassing, disruptive, and
threatening behavior.  <u>Id.</u>

before the incident.  It was only after the verbal confrontation
with Norman on April 1, 2010, which prompted Norman to report
the incident to the Rowan police, that defendants issued the
ban.  Thus, the facts as plead show that it was not plaintiffs'
policing and videotaping of handicap parking spots that prompted
the ban, but rather, the intentional confrontation of a Rowan
student by plaintiffs.  See Zagami, 537 Fed.Appx. at 48
(concluding that Cottrell and Holland did not establish a prima
facie case of causation where the letter banning Cottrell from
Landmark was based on her "prior actions ... disruptive of the
regular and essential operations" of the business).

As this Court has previously stated, "[e]ven if plaintiffs
had come onto campus to protect disabled persons' parking
rights, [it] does not mean they can conduct themselves in any
manner without consequence.  The cloak of the ADA does not
extend its protections that far."  Rowan, 786 F.Supp.2d at 859-
60.  Therefore, the ban issued by the Rowan defendants was based
on plaintiffs' harassing and disruptive behavior and not because
of any protected activity.  Plaintiffs' retaliation claim will
be dismissed.

**C. Federal Constitutional Claims**

Plaintiffs bring a 42 U.S.C. § 1983 claim on grounds that
the Rowan defendants violated their First, Fourth and Fourteenth

Amendment rights.[6]  Plaintiffs argue that their due process and equal protection rights under the Fourteenth Amendment were violated.  The Rowan defendants respond that they are entitled to qualified immunity.  Because plaintiffs fail to make out a constitutional violation, the Rowan defendants are entitled to qualified immunity.[7]

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment,

---

6 To the extent plaintiffs are bringing an ADA claim pursuant to § 1983, such claim will be dismissed because the ADA provides an exhaustive remedy.  <u>See</u> <u>A.W. v. Jersey City Public Schools</u>, 486 F.3d 791 (3d Cir. 2007)(finding that remedies in comprehensive remedial statues supplant § 1983 claims); <u>Stine v. Pennsylvania State Police</u>, No. 09-944, 2010 WL 4514326, at *6 (M.D.Pa. Nov. 2, 2010) (dismissing ADA claim because "Congress foreclosed the use of § 1983 as a vehicle for such a claim by providing Stine with an exhaustive remedy under the ADA.").

7  Also, because § 1983 claims may only be asserted against a "person," <u>see</u> <u>Fields v. Essex County Probation Dept.</u>, 2011 WL 677255, *2 (N.J.Super.Ct.App.Div. 2011), these claims fail against Rowan University, Rowan University Police Department, Rowan University Public Safety, and Rowan Security Department.

distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). The doctrine provides a government official immunity from suit rather than a mere defense from liability, and, thus, the issue of whether qualified immunity applies should be decided at the earliest possible stage in litigation. Id. "Qualified immunity ... gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Fiore v. City of Bethlehem, 510 F. App'x 215, 219-20 (3d Cir. 2013) (citing Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012)) (internal quotation marks and citations omitted).

Qualified immunity attaches if the official can demonstrate his or her conduct was "objectively reasonable." See Harlow, 457 U.S. at 818. "There are two prongs to the objective reasonableness inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful." Davis v. Malitzki, 451 F. App'x 228, 232 (3d Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 200-01 (2001)). If the answer to either question is "no," the analysis may end there. See Pearson, 129 S. Ct. at 816; see also Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002) ("If

21

the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [official] is entitled to immunity.").

**1. First Amendment**

Plaintiffs' First Amendment retaliation claim will be dismissed for failure to allege facts that could show that the adverse action was prompted by plaintiffs' protected conduct. To establish a First Amendment retaliation claim, plaintiffs must prove the following elements: (1) they engaged in constitutionally protected conduct; (2) defendants took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) the adverse action was prompted by plaintiffs' protected conduct. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Even if plaintiffs' actions were protected First Amendment activity, and their ban from campus sufficiently deterred them from continuing those activities, for the same reasons expressed above with regard to plaintiffs' ADA and NJLAD retaliation claims, plaintiffs have not alleged sufficient facts in support of a plausible claim that their ban from campus was motivated by their protected activities.[8]

---

8 Moreover, simply because a place is open to the public, and the public is allowed to roam about unhindered, it is not per se converted into a public forum. United States v. Grace, 461 U.S.

22

Accordingly, plaintiffs' First Amendment claim fails.[9]

## 2. Fourth Amendment

Plaintiffs' Fourth Amendment claim will be dismissed because plaintiffs have failed to allege facts that could show the absence of probable cause.  To state a Fourth Amendment claim for false arrest,[10] a plaintiff must allege two elements: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) and Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)).  Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient

---

171, 177 (1983); Greer v. Spock, 424 U.S. 828, 837 (1976).

9 Plaintiffs make the argument in one of their opposition briefs that they have a right to videotape under the First Amendment. Plaintiffs have not made allegations that could show the ban was due to plaintiffs' videotaping.  Rather, the facts as alleged demonstrate that the ban from Rowan's campus was due to their harassing and disruptive behavior.

10 To the extent plaintiffs invoke the Fourteenth Amendment in support of their false arrest claim, such claim must be dismissed.  It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983.  See Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000) (collecting cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).

to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. State of Ohio, 379 U.S. 89, 91 (1964)).  "Probable cause ... requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482–83 (3d Cir. 1995).

Here, Cottrell was charged with theft by unlawful taking and disorderly conduct in violation of N.J.S.A. 2C:20-3(a) N.J.S.A. 2C:33-4(c).  The Rowan defendants arrested Cottrell on the basis of the sworn statements by Norman in a criminal complaint.  Based on the allegations in plaintiffs' second amended complaint, Norman alleged that Cottrell: walked around her car several times staring at her and looking in her windshield at her handicap placards; pointed to her expired and unexpired placards in her vehicle; repeatedly asked her to show her the placard although it was visible through the windshield; went to the front of Norman's vehicle and took the handicap placard;[11] denied to Norman that she was harassing her; and that

---

11 It is not clear whether it was alleged that Cottrell actually took the placard or only attempted to remove it.

24

Norman called Cottrell "a few 'F' words" and a "thief."  Norman also stated in her criminal complaint that it was not the first time Cottrell harassed her.[12]

The sworn statements made by Norman in a criminal complaint filed with the Rowan Police Department establish probable cause for the arrest.  Plaintiffs have failed to allege facts that could demonstrate the absence of probable cause necessary to establish a § 1983 claim for false arrest and, therefore, this claim will be dismissed.

### 3. Fourteenth Amendment

#### a. Due Process

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  In order to establish a violation of due process, plaintiffs must establish that "(1) [they were] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty and property, and (2) the procedures available to [them] did not provide him with due process of law."  Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006).  Plaintiffs have not shown either.

---

12 The Court notes that plaintiffs allege that the statements made by Norman were false.

First, plaintiffs have not articulated how they have a constitutionally protected, substantive right to come onto Rowan's campus.  See Albright v. Oliver, 510 U.S. 266, 272 (1994) (explaining that substantive due process protection has "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity"); Adderley v. State of Florida, 385 U.S. 39, 47 (1966) ("The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.").

Even if they did, plaintiffs have not shown how that right was taken from them without proper procedures.  Plaintiffs were informed of, and provided, a hearing regarding their 2010 ban from campus, the opportunity to further appeal that hearing decision, and the ability to appeal that decision to the New Jersey courts.  Plaintiffs appealed the ban and an administrative hearing was held.  The appeal was denied and the ban was upheld to remain in effect until 2015.  Plaintiffs did not appeal the administrative appeal to the New Jersey state court.  See N.J. Ct. R. 2:2-3(a)(2)(The New Jersey Superior Court, Appellate Division, has appellate jurisdiction over appeals of final agency decisions).  The numerous opportunities to challenge the validity of Rowan's decision to ban plaintiffs

26

from campus more than satisfies the Fourteenth Amendment's due process requirement.  See Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542 (1985) ("The core of due process is the right to notice and a meaningful opportunity to be heard.").  Simply because plaintiffs disagreed with the procedures or did not avail themselves of them does not mean those procedures were lacking in due process.

Therefore, their Fourteenth Amendment due process claim will be dismissed.

### b.  Equal Protection

Similarly, plaintiffs have not made out an equal protection claim.  In order to prove a claim under the Equal Protection Clause, plaintiffs must show that absent a rational basis for doing otherwise, they were treated differently from similarly situated persons.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Vacco v. Quill, 521 U.S. 793, 799 (1997) (explaining that the Equal Protection Clause, which "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,'" does not create any substantive rights, and "[i]nstead, . . . embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." . . . "If a legislative classification or distinction neither burdens a fundamental

right nor targets a suspect class, we will uphold [it] so long as it bears a rational relation to some legitimate end") (citations omitted).

Plaintiffs have not alleged any facts that could make out a plausible claim that non-ADA-activists who have engaged in similar conduct have not been similarly banned from campus. Consequently, plaintiffs' equal protection claim also fails.

Because plaintiffs have failed to allege facts in support of their Constitutional claims, the Rowan defendants are entitled to qualified immunity.[13]  See Davis, 451 F. App'x at 232 (first prong of qualified immunity test is whether the plaintiff's constitutional or statutory rights were in fact violated).  Accordingly, these claims will be dismissed.

**D. New Jersey Civil Rights Act**

In addition to their federal civil rights claims, plaintiffs assert a claim under the analogous New Jersey Civil

---

13 Even if plaintiffs properly alleged facts in support of a Constitutional violation, they have not demonstrated that the defendants' conduct was objectively unreasonable.  See Harlow, 457 U.S. at 818.  Defendants' decision to arrest Cottrell was based on the allegations of Norman, whose statements they had no reason to doubt.  In addition, plaintiffs had a history of exhibiting disruptive and harassing behavior toward Rowan students and staff.  Thus, defendants' reliance on Norman's statements was reasonable.

Rights Act (NJCRA).[14]  See N.J.S.A. 10:6-1.  Like Section 1983, NJCRA is a means of vindicating substantive rights and is not a source of rights itself.  Gormley v. Wood-El, --- A.3d ----, 2014 WL 2921824, at *9 (N.J. Jun. 30, 2014).

Plaintiffs seek redress pursuant to the NJCRA based on the same facts plead in support of their Federal civil rights claims.  For the same reasons that their § 1983 claims will be dismissed, plaintiffs' state civil rights claims will be dismissed.  Cluver v. Borough of Sayreville, 557 Fed.Appx. 180, 182 (3d Cir. 2014) (affirming dismissal of claims under New Jersey Civil Rights Act because claim was precluded due to finding that defendant was entitled to qualified immunity);

---

14 The New Jersey Civil Rights Act provides, in relevant part, that:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2(c).

Trafton v. City of Woodbury, 799 F.Supp.2d 417, 443–44 (D.N.J.
2011) ("This district has repeatedly interpreted NJCRA
analogously to        § 1983.")(citing Chapman v. New Jersey,
No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009));
Armstrong v. Sherman, No. 09–716, 2010 WL 2483911, *5 (D.N.J.
June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of
analog to section 1983 ....").[15]

**E. Malicious Use of Process**

Defendants move for dismissal of plaintiffs' malicious use
of process claim.  However, as noted in the Court's Order

---

15 Plaintiffs state that pursuant to Love v. New Jersey Div. of
Youth & Family Services, No. 07-3661, 2010 WL 2950019, at *2 n.
10 (D.N.J. July 22, 2010), qualified immunity is not a defense
under the New Jersey Constitution or NJCRA.  The Love case does
not support this proposition.  In Love, the Court concluded that
even though it "found no caselaw addressing the question of
whether persons subject to liability under the New Jersey Civil
Rights Act have a qualified immunity defense, ... the
legislative history of the Civil Rights Act states that the Act
was 'modeled on' § 1983, the Massachusetts Civil Rights Act, and
the Maine Civil Rights Act."  Id. (citations omitted).  The
Court determined that because qualified immunity is a defense to
all three, it "assume[d] without deciding that, as a legal
matter, state officials sued in their individual capacity under
the New Jersey Civil Rights Act do have a qualified immunity
defense available to them."  Id. (citations omitted).
Therefore, the Court in Love, assumed that qualified immunity
applied.  Moreover, the Third Circuit has ruled that qualified
immunity is a defense under the NJCRA.  See Cluver, 557 Fed.Appx.
at 182 ("the New Jersey Civil Rights Act claim against Anderson
was precluded due to the finding that he was entitled to
qualified immunity").

entered December 4, 2013, plaintiffs' request for leave to
assert a malicious use of process claim against the Rowan
defendants was denied as futile.  Thus, there is no malicious
use of process or malicious prosecution claim[16] against the Rowan
defendants.[17]

---

16  See Pitcock v. Kasowitz, Benson, Torres & Friedman, L.L.P.,
46 A.3d 586, 585 n. 1 (N.J.Super.A.D. 2012) (explaining that in
the State of New Jersey the tort is called malicious use of
process).  Generally, the Court refers to the state law claim as
malicious use of process except where the terms malicious
prosecution is used in the case law.

17 In addition, plaintiffs' malicious use of process claim is
invalid for failure to demonstrate lack of probable cause (as
discussed supra).  To the extent plaintiffs are bringing a
Constitutional claim of malicious prosecution, the claim is
invalid for failure to show lack of probable cause.  See Johnson
v. Bingnear, 441 F. App'x 848, 851 (3d Cir. 2011) ("In order to
prevail on a claim of malicious prosecution, a litigant must
demonstrate that: '(1) the defendants initiated a criminal
proceeding; (2) the criminal proceeding ended in the plaintiff's
favor; (3) the proceeding was initiated without probable cause;
(4) the defendants acted maliciously or for a purpose other than
bringing the plaintiff to justice; and (5) the plaintiff
suffered deprivation of liberty consistent with the concept of
seizure as a consequence of a legal proceeding.'")(citing
McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir.
2009)).  Likewise, any claim for malicious use of process under
New Jersey law fails because plaintiffs have not shown lack of
probable cause.  See Lind v. Schmid, 67 N.J. 255, 262, 337 A.2d
365, 368 (1975) (plaintiff must show: "(1) that the criminal
action was instituted by the defendant against the plaintiff,
(2) that it was actuated by malice, (3) that there was an
absence of probable cause for the proceeding, and (4) that it
was terminated favorably to the plaintiff.") (citations
omitted).  At this stage, the malicious use of process claim
fails for lack of probable cause and the Court does not address
whether plaintiffs could plead sufficient proof as to the other
elements.

## VI. CONCLUSION

For the foregoing reasons, the Rowan defendants' motion to dismiss will be granted.[18] Defendants Rowan University, Rowan University Police Dept., Rowan University Public Safety Dept., Michael Kantner, Rowan Security Dept., Rowan Police Lieutenant John Malinski, Rowan Police Officer Siobhan McClintok, Rowan Police Officer Ryan Brennan, Rowan Police Officer Carrie Rathof,

---

18 The Rowan defendants also argued that plaintiffs' ADA claim was untimely. Plaintiffs filed their complaint on April 2, 2012, not April 3, 2012 as defendants state and, therefore, plaintiffs' claim was not barred by the statute of limitations.

In addition, the Rowan defendants argue that as a public agency, Rowan is immune from suit. The Court finds that, at the motion to dismiss stage, defendants have not come forward with sufficient evidence in support of the Fitchik factors to show that they are entitled to sovereign immunity. See Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 2008) (outlining factors to consider whether state is the real party in interest and whether eleventh amendment immunity extends to an entity). As defendants note, the law is unsettled on this question in this district. Although defendants argue that the Governor of New Jersey's "Reorganization Plan" provides more oversight of state colleges, including Rowan, defendants have not provided sufficient facts to show "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." Bowers v. National Collegiate Athletic Ass'n, 475 F.3d 524, 546 (3d Cir. 2007) (finding that Rutgers, the State University of New Jersey, was not entitled to Eleventh Amendment immunity). Therefore, the Court will deny defendants' motion to dismiss on grounds of Eleventh Amendment immunity without prejudice.

and Rowan Police Sergeant Frank Davey will be dismissed.

An Order consistent with this Opinion will be entered.

                                              s/Noel L. Hillman
                                                  _____

At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

Dated:   __July 25, 2014__